**\*E-filed 9/10/09\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EK VATHANA, individually and on behalf of all others similarly situated, | Case No. 5:09-CV-2338-RS |
| Plaintiff, | **ORDER REGARDING MOTION TO REMAND** |
| v. | |
| EVERBANK, a/k/a EVERBANK DIRECT, a/k/a EVERBANK FEDERAL SAVINGS ASSOCIATION; EVERBANK FINANCIAL CORPORATION; EVERBANK WORLD MARKETS; and DOES 1 to 25, | |
| Defendants. | |

## I. INTRODUCTION

This litigation arises from a breach of contract dispute between an investor and his bank. Plaintiff Ek Vathana filed his complaint in Santa Clara County Superior Court in April 2009, and defendants EverBank, EverBank Financial Corporation, and EverBank World Markets (collectively, "EverBank") removed the case to this Court. Thereafter, Vathana moved to remand, and EverBank moved to dismiss. For the reasons stated below, the parties are permitted to supplement their evidentiary submissions as to amount in controversy, in order to resolve the issue of remand on a full and complete record.

II.  FACTUAL AND PROCEDURAL HISTORY

Vathana's complaint alleges the following facts.  Among its other financial products, EverBank offers a "WorldCurrency CD."  The concept behind this CD "is that one can send a deposit of US Dollars to EverBank, that EverBank will then convert those US Dollars to any one of a number of different foreign currencies, and that EverBank will hold those funds for a term in the form of a Certificate of Deposit and add interest thereto at the end of the term."  Complaint, attached as Exh. B to Notice of Removal, at 3.  In July 2008, Vathana invested $9,447.49 USD in a WorldCurrency CD denominated in Icelandic krona or "ISK" (CD #6207226771, hereinafter "CD 771").  The value of CD 771 at the time of investment was 743,045.22 ISK.  In September 2008, Vathana invested $40,040.07 USD in a second WorldCurrency CD, again denominated in ISK (CD #6207332237, hereinafter "CD 237").  The value of CD 237 at the time was 3,525,527.75 ISK.  Both CDs had a term of three months.

The document governing these transactions was entitled EverBank Account Disclosures and Terms & Conditions Agreement (the "Agreement").  It provided that investors had three options when their CDs matured:  (1) liquidation of the CD; (2) return of the interest and re-investment of the principal; and (3) rollover of the CD and its proceeds by re-investing in the same currency for the same maturity, at the current prevailing interest rate.  Unless EverBank heard otherwise from the investor, the third option operated as the default.[1]

In October 2008, CD 771 matured, and Vathana sent EverBank a written instruction requesting that the CD be rolled over.  The instruction also stated, "I will not accept a forced liquidation conversion.  If you choose to close my accounts, I demand you send me the actual physical ISKs."  Complaint, *supra*, at 8.  Nonetheless, EverBank closed CD 771 on October 20, 2008, and, two days later, converted it into US dollars at what Vathana contends was "an incredibly low interest rate" in comparison to published rates.  Specifically, at the time of its conversion, CD

---

[1] According to EverBank, the amounts Vathana invested in July and September 2008 were actually rolled over from earlier, nearly identical CDs that Vathana had previously owned through EverBank.  In fact, he first bought into Icelandic currency through EverBank's WorldCurrency CD program in 2007, purchasing a $50,000 ISK CD in June 2007 and a second $11,500 ISK CD in July 2007.  The original two CDs continued to roll over every three months until the present controversy arose.

2

771 was valued at 747,676.53 ISK, and EverBank converted it to $2,958.03 USD. Thus, Vathana's loss over the three-month term of CD 771 was $6,489.46 USD.

Similarly, in December 2008, CD 237 matured, and EverBank closed it and converted it into US dollars at an allegedly unfavorable exchange rate. At the time of its conversion, the CD was valued at 3,547,501.93 ISK, and EverBank converted it into $16,339.19 USD. Thus, Vathana's loss over the three-month term of CD 237 was $23,700.88 USD.

Based on these events, Vathana filed a putative class action in Santa Clara County Superior Court on April 24, 2009. The sole cause of action listed in the complaint was breach of contract. Specifically, Vathana alleged that EverBank had breached the Agreement by closing out CDs 771 and 237 and converting them into US currency, rather than re-investing their value in more CDs denominated in ISK, as Vathana had instructed. EverBank removed the action to this Court on May 27, 2009. Vathana moved to remand the case, and EverBank moved to dismiss the complaint. Both motions were heard in this Court on August 26, 2009.

### III.  STANDARD

EverBank's notice of removal cites 28 U.S.C. § 1332, the diversity statute, as its basis for jurisdiction. Vathana contends that although the parties are unquestionably diverse, the case fails to meet the amount in controversy requirements set forth in § 1332.

§ 1332(a) provides that, in order for a federal district court to exercise jurisdiction over a lawsuit between diverse parties, the amount in controversy must exceed the sum or value of $75,000.00, exclusive of interests and costs. If, as here, the case is a putative class action, it may alternately satisfy the amount in controversy requirement if the sum total of damages alleged by the class exceeds $5,000,000.00. 28 U.S.C. § 1332(d)(2) (incorporating the Class Action Fairness Act of 2005, or "CAFA").

The removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (applying this standard for individual claims); *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (applying this standard for class claims). In determining the amount in controversy, courts must take into account not only actual pecuniary

3

1  damages, but potential damages in the form of punitives and attorney fees. *Martinez v. Reserve Life*
2  *Ins. Co*, 879 F.2d 865 (9th Cir. 1989). In describing the type of evidence removing defendants may
3  rely upon, the Ninth Circuit has "endorsed the Fifth Circuit's practice of considering facts presented
4  in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in
5  controversy at the time of removal.'" *Valdez*, 372 F.3d at 1117 (citations omitted). In meeting their
6  burden, defendants cannot rely simply upon conclusory allegations. *Singer v. State Farm Mut. Auto.*
7  *Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997). "[A] conclusory allegation neither overcomes the strong
8  presumption against removal jurisdiction, nor satisfies the defendant's burden of setting forth, in the
9  removal petition itself, the underlying facts supporting its assertion that the amount in controversy
10 exceeds the applicable dollar value." *Valdez*, 372 F.3d at 1117 (internal quotations omitted).

## IV. ANALYSIS

### A. Individual Claim

In his motion to remand, Vathana argues that the maximum he may recover in an individual capacity is the sum of his losses on CDs 771 and 237, or $30,190.34. Further, he contends that he is not seeking punitive damages, and, indeed, that such damages are not even available in breach of contract cases under California law. *See* Cal. Code of Civ. P. § 3294(a). EverBank counters that Vathana's individual losses are actually greater than he alleges.

First, EverBank contends these losses should be computed based on Vathana's original 2007 investments in EverBank's WorldCurrency CD program, rather than on the investments he made in CD 771 and CD 237. Since Vathana initially invested $50,000.00 in an ISK CD in June 2007 and $11,500 in a second ISK CD in July 2007 (see footnote 1, *supra*), EverBank contends his losses amount to $42,202.78, or the sum of the difference between Vathana's two 2007 investments and the two amounts he received from EverBank in October and December of 2008.

EverBank then doubles this $42,202.78 to arrive at $84,405.56, which it contends is the real amount in controversy. Its basis for doubling the damages is a relatively unspecific assertion which Vathana's attorney, Michael Millen, made in a demand letter pre-dating the complaint: "Please be advised that your failure to comply with this request [to refund Vathana's losses] within 30 days of receipt of this letter may subject you to the following remedies, which are available for a violation

4

of the Consumer Legal Remedies Act. (1) The actual damages suffered . . . (4) Punitive damages[.]" Letter from Michael Millen, dated February 26, 2009, at 3-4, attached as Exh. 1 to First Declaration of Frank Trotter; *see* Cal. Civil Code § 1780(a)(4) (providing that punitive damages are available for violations of the CLRA, but not specifying any particular proportion between actual and punitive damages).

EverBank's convoluted arithmetic fails to satisfy its burden of proof as to amount in controversy. The complaint specifically bases its calculations of Vathana's damages upon the loss of value experienced by CDs 771 and 237, but nowhere does it mention Vathana's initial investments of $50,000 and $11,500. Moreover, the sole cause of action alleged in the complaint is common law breach of contract. The complaint nowhere cites the CLRA, nor does it make any request for punitive damages predicated on that statute. Although EverBank urges the Court to look beyond the four corners of the complaint and to take into account Millen's pre-suit threats, it musters no authority to warrant that review. The practice of "looking beyond" the complaint to determine the amount in controversy is only proper when the sole dispute concerns the *amount* of money at stake in a particular claim. The case law does not authorize this Court to embark on an expedition to identify and value entire *claims* not otherwise mentioned in the complaint. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (explaining that state law prohibitions on stating a dollar amount in the complaint do not cut unfairly against defendants' ability to remove, because "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (authorizing consideration of amounts discussed in settlement letters when determining amount in controversy, if such amounts "appear[] to reflect a reasonable estimate of the plaintiff's claim").

For these reasons, the preponderance of evidence as to amount in controversy favors Vathana, and the case would be a clear candidate for remand—were it limited only to Vathana's individual claims. EverBank, however, also seeks to meet its burden via the alternate route regarding putative class claims under CAFA.

B. <u>Class Claim</u>

EverBank's showing of amount in controversy under CAFA is more problematic. The threshold question, of course, is how Vathana chooses to define the putative class.

According to the complaint, "[c]lass members as to all . . . causes of action include all persons who purchased an EverBank[] WorldCurrency Certificate of Deposit and who, within the last 4 years, have not been paid the correct value of their deposit based upon the fact that (a) EverBank has refused to renew the person's CD, and/or (2) EverBank purportedly 'converted' the person's foreign currency CD to US dollars without consent." Complaint, *supra*, at 9. Vathana's reply in support of remand, however, states that, "[f]or purposes of this motion only," he wishes to limit the putative class to encompass only those persons who owned WorldCurrency CDs denominated in ISK, which were converted to US dollars in the wake of the Icelandic financial crisis.

The complaint, as noted, contains no such limitation. Moreover, in response to a question posed by the Court during oral argument, Vathana's counsel conceded that he ultimately intended the class to include owners of WorldCurrency CDs denominated in any and all world currencies, and did not wish to limit the case to owners of ISK CDs only. There is no authority that would permit Vathana to limit the size of the class only for purposes of the motion to remand, while still retaining the right to redefine the class in an exponentially broader manner at a later point in time. Indeed, CAFA was enacted in part to prevent exactly this kind of jockeying. *Davis v. Homecomings Financial*, No. C05-1466RSL, 2007 WL 905939, at *2 (W.D. Wash. Mar. 22, 2007) (noting that CAFA's legislative history suggests it was designed specifically to prevent plaintiffs from attempting to "manipulate the forum").

As Vathana has effectively conceded that the putative class encompasses all WorldCurrency CD owners (and not just ISK CD owners), the principal consideration is whether EverBank has proved, by a preponderance of the evidence, that more than $5 million is in controversy. EverBank presents only one piece of evidence to support its contention that the broad putative class described in the complaint would allege losses of more than $5 million: a declaration from EverBank's executive vice president, Henry Trotter. The declaration estimates the alleged losses of the putative

class at either $49,183,666.92 or $78,634,690.64, depending on whether the class includes every customer whose WorldCurrency CD has been converted into US dollars in the last four years, or only those who have suffered an actual loss in their investment as a result of such a conversion. Trotter, however, stops short of explaining the method he used to arrive at these figures, merely stating without elaboration that he employed "Vathana's loss calculation methodology."

Vathana, with some justification, alleges that Trotter's estimates are conclusory and lack foundation. While a removing defendant is not responsible for "conduct[ing] a fact-specific inquiry into whether the rights of each and every potential class member were violated," answering "the ultimate question the litigation presents," or "try[ing] the case [itself] for the purposes of establishing jurisdiction," it is nonetheless proper for district courts to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met. *Pereira v. Gate Gourmet, Inc.*, No. 08-07469 MMM, 2009 WL 1212802, at *4 (C.D. Cal. Apr. 30, 2009) (alterations original).

Other courts in this circuit, moreover, have considered similar—or even more thorough—evidentiary offerings in support of amount in controversy, and have nonetheless concluded that the removing defendant failed to meet the requisite burden. *Compare Carr v. Esurance Ins. Co.*, No. 09-0667-PHX-JAT, 2009 WL 2132699, at *2-3 (D. Ariz. July 16, 2009) (assessing various pieces of evidence including a settlement letter, an affidavit forecasting projected attorney fees, and a verdict in an allegedly comparable case, and concluding that the defendant had failed to meet its burden), *and Pomponio v. DeWalt Industrial Tool Co.*, No. C 02-05635 WHA, 2003 WL 1344476, at *1-2 (N.D. Cal. March 12, 2003) (remanding after a removing defendant relied merely upon the unspecific allegations of the complaint and speculated about the plaintiff's medical expenses), *with Turner v. Am. Hardware Mut. Ins. Co.*, No. CV-09-0888-PHX-JAT, 2009 WL 2259612, at *3 (D. Ariz. July 29, 2009) (finding that a pre-suit demand letter from the plaintiff, which named a specific sum exceeding the jurisdictional amount, was sufficient to establish that the plaintiff intended to put that amount in controversy).

In this case, the bare allegations of the Trotter declaration, standing alone, cannot carry EverBank's evidentiary burden under CAFA. Recognizing, however, that Vathana's initial lack of

clarity as to the definition of the putative class may have contributed to EverBank's failure to quantify the damages at stake in sufficient detail, the Court will extend an opportunity to EverBank to supplement its evidentiary submission with a more specific description of how Trotter arrived at his estimates. Vathana, now that he has clarified his position as to the makeup of the putative class, will also have the opportunity to respond to EverBank's supplemental filing.

## V.  CONCLUSION

EverBank shall have up to but no later than **September 18, 2009**, to submit any further documentation, affidavits, etc., in support of the jurisdictional amount it seeks to prove under CAFA.

Vathana shall have up to but no later than **September 25, 2009**, to submit any reply to EverBank's supplemental filing.

In the meantime, Vathana's motion to remand and EverBank's motion to dismiss remain under submission.

Dated: 9/10/09

RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE