IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EK VATHANA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>EVERBANK, a/k/a EVERBANK DIRECT, a/k/a EVERBANK FEDERAL SAVINGS ASSOCIATION; EVERBANK FINANCIAL CORPORATION; EVERBANK WORLD MARKETS; and DOES 1 to 25,<br><br>Defendants.<br>_____/ | Case No. C 09-2338 RS<br><br>**ORDER DENYING MOTION TO REMAND AND MOTION TO DISMISS** |

I. INTRODUCTION

This order follows on a previous order entered on September 10, 2009, which left unanswered the question, can this Court exercise diversity jurisdiction over this case under the Class Action Fairness Act ("CAFA"). Having received further briefing and evidentiary submissions from the parties, the Court now concludes that CAFA jurisdiction exists, and therefore plaintiff Ek Vathana's motion to remand must be denied. Further, for the reasons stated below, the Court will also deny the Rule 12(b)(6) motion to dismiss filed by defendants EverBank, a/k/a EverBank Direct, a/k/a EverBank Federal Savings Assocation ("EFSA"), EverBank Financial Corporation ("EFC"), and EverBank World Markets ("EWM") (collectively, "EverBank").

## II. FACTUAL AND PROCEDURAL HISTORY

The complaint's factual allegations were described in detail in this Court's prior order and will be reviewed here only briefly. *See* Order Regarding Motion to Remand, filed September 10, 2009 (the "September 10 Order"), at 2-3. In his individual capacity, Vathana alleges that EverBank incurred liability for breach of contract by closing out two of Vathana's WorldCurrency CDs, both of which were denominated in Icelandic krona (ISK). Although the ISK CDs had reached the end of their three-month term at the time of the alleged breach, Vathana contends EverBank was contractually obligated to roll them over into two new ISK CDs with similar terms, instead of closing them and converting them to U.S. dollars. Similarly, in his capacity as a putative class member, Vathana alleges that EverBank breached its contract with all investors whose WorldCurrency CDs were closed out and converted into U.S. dollars against their wishes.

Vathana filed his putative class action in Santa Clara County Superior Court in April 2009, and EverBank removed the case to this Court in May 2009. Vathana then moved to remand, while EverBank moved to dismiss. Both motions were heard in this Court on August 26, 2009.

On September 10, 2009, the Court issued an order finding that Vathana's individual claims, standing alone, did not meet the required $75,000 jurisdictional amount necessary for the Court to exercise diversity jurisdiction under 28 U.S.C. § 1332(a). September 10 Order, *supra*, at 4-5. The Court deferred ruling, however, on the issue of whether Vathana's class claims could meet the $5,000,000 jurisdictional threshold for diverse class actions under 28 U.S.C. § 1332(d)(2), September 10 Order, *supra*, at 6-8, then invited and received further evidentiary submissions from the parties on that issue.

## III. VATHANA'S MOTION TO REMAND

As noted above and in the September 10 Order, a putative class action may satisfy the amount-in-controversy requirements of diversity jurisdiction if the sum total of damages alleged by the class exceeds $5,000,000.00. 28 U.S.C. § 1332(d)(2) (incorporating CAFA). The removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (applying this standard for class claims). In describing the type of evidence

1  upon which removing defendants may rely, the Ninth Circuit has "endorsed the Fifth Circuit's
2  practice of considering facts presented in the removal petition as well as any 'summary-judgment-
3  type evidence relevant to the amount in controversy at the time of removal.'" *Valdez v. Allstate Ins.
4  Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (citations omitted).

In this case, EverBank (via its supplemental filing) has provided the Court with substantial data detailing the estimated amount in controversy, including a spreadsheet listing affected ISK CDs and their values. All told, according to the spreadsheet, the alleged losses associated with the ISK CDs amount to $5,400,731.76.[1] This number alone exceeds the $5,000,000.00 CAFA threshold, and it does not even include losses incurred by holders of WorldCurrency CDs denominated in currencies other than ISK. Vathana has stated that, at this stage of the proceedings, he does not contest EverBank's calculations. The Court's independent review of the parties' evidence also indicates that EverBank has met its burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount of $5,000,000.00. The Court is therefore authorized to exercise diversity jurisdiction under 28 U.S.C. § 1332(d), and Vathana's motion to remand will accordingly be denied.

## IV. EVERBANK'S MOTION TO DISMISS

### A. Standard

EverBank's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating such a motion, the court must accept all material allegations in the

---

[1] EverBank claims to have arrived at this figure using the damages calculation method described by Vathana in his motion to remand, and Vathana does not contest the point.

complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

B. *Force Majeure* Clause

In its first argument in favor of its motion to dismiss, EverBank points to the *force majeure* clause in the allegedly breached contract (EverBank Account Terms, Conditions, and Disclosures Agreement, hereinafter the "Agreement"), which provides, in pertinent part, as follows:

> Neither [the account holder] nor EverBank shall be liable in damages for any delay or default in performing hereunder if such delay or default is caused by conditions beyond our control including, but not limited to . . . government restrictions (including the denial or cancellation of any export or other necessary license) . . . and/or any other cause beyond the reasonable control of the party whose performance is affected. *We may close your non-U.S. dollar account(s) . . . or . . . convert them to U.S. dollars at any time if we deem such action necessary, in our sole discretion, in response to . . . government restrictions (including the denial or cancellation of any export or other necessary license) . . . and/or any cause beyond the reasonable control of us.*"

Agreement, *attached as* Ex. B to Complaint, at 11 ¶ 1.32 (emphasis added). According to EverBank, this clause authorizes EverBank, in its discretion, to close out the disputed CDs upon their termination, rather than rolling them over. Vathana responds that (1) there is no true causal nexus between the Icelandic government's actions in the financial crisis and EverBank's decision to close out its ISK CDs; (2) EverBank failed to comply with its contractual duty to obtain "negotiable consideration" on Vathana's behalf in exchange for his losses; and (3) EverBank's argument requires substantial evidentiary backup, probably including extensive expert testimony, which EverBank has yet to provide.

The analysis here turns on the standard of review for motions to dismiss, which requires the Court to construe all allegations in the complaint as true. Vathana's complaint alleges that "EverBank has attempted to justify its actions by claiming that it experienced a 'force majeure' . . . [and] has publicly claimed that the government of the Republic of Iceland imposed certain rules and regulations which reduced or eliminated EverBank's . . . abilities to engage in certain Icelandic krona/US dollar transactions . . . . However, whatever the permanent or temporary rules and regulations of the Iceland government may have been, none of them has ever or could ever serve as

4

CASE NO. C 09-02338 RS
ORDER DENYING MOTION TO REMAND AND MOTION TO DISMISS

justification for EverBank to commit the aforementioned breaches of its contractual obligations towards [Vathana]." In this phase of the lawsuit, the Court is obliged to take this allegation as true. The details of the Icelandic government's actions in the financial crisis are not yet in evidence,[2] and to assume that these actions, whatever they were, authorized EverBank to act under the *force majeure* clause would be to view a material factual allegation in the complaint in the light most favorable to EverBank—not Vathana. For this reason, EverBank's first argument in favor of its motion to dismiss is without merit.

C.  <u>EFSA, EFC, and EWM as Alter Egos</u>

EverBank next argues that EFC and EWM never entered into any contract with Vathana and therefore do not belong in this lawsuit. The Agreement, EverBank contends, was between Vathana and EFSA only. According to EverBank, Vathana "attempt[s] to lump all three Defendants into a single Jumbled entity, in the apparent hope that the Court will not recognize that only one of the three Defendants is actually a party to the actual contract." Motion to Dismiss at 13. The complaint, for its part, alleges that EFSA, EFC, EWM are "agents, servants, alter-egos, partners, joint venturers, and/or co-conspirators" of one another. Complaint at 2.

At this stage of the litigation, as noted above, the Court must draw all inferences in Vathana's favor. Vathana's allegation that EFC and EWM are alter egos of EFSA gives rise to the inference that any contract with EFSA is a contract with all three defendants. Therefore, at this juncture, EFC and EWM are properly joined parties, and EverBank's argument on this score is unpersuasive.

D.  <u>Preemption</u>

EverBank's final argument is that Vathana's state law breach of contract claim is preempted by the federal laws regulating the activity of federal savings associations. As a general matter, federal preemption of state law can occur in three ways:

---

[2] EverBank asks the Court to take judicial notice of various documents in the public record, such as Icelandic legislation passed in response to that country's banking meltdown and a speech by Prime Minister Geir H. Haarde, dated October 6, 2008. These documents, however, do not contain a direct evidentiary link between the Icelandic government's actions and the operation of the *force majeure* paragraph in the Agreement. Future proffers of evidence may or may not disclose such a link; on that point, the Court expresses no opinion. Accordingly, EverBank's request for judicial notice will not be ruled on at this time.

> (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.

*Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (quoting *Indus. Truck Ass'n v. Henry*, 125, 1305, 1309 (9th Cir. 1997)). In this case, EverBank argues for field preemption, contending that that the Home Owners Loan Act ("HOLA") and the regulations promulgated thereunder by the Office of Thrift Supervision ("OTS") occupy the entire field of federal savings associations' deposit-related regulations.

The pertinent regulation enacted by OTS provides as follows:

> To further [HOLA's] purposes without undue regulatory duplication and burden, OTS hereby occupies the entire field of federal savings associations' deposit-related regulations. OTS intends to give federal savings associations maximum flexibility to exercise deposit-related powers according to a uniform federal scheme of regulation. Federal savings associations may exercise deposit-related powers as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect deposit activities, except to the extent provided in 557.13. State law includes any statute, regulation, ruling, order, or judicial decision.

12 C.F.R. § 557.11(b). An accompanying regulation lists examples of preempted state laws affecting deposits. These include state laws purporting to govern checking accounts, funds availability, service charges and fees, and state licensing and registration requirements. *Id.* § 557.12. Finally, the following regulation lists categories of state laws which, though they may pertain to deposit-related activities, are nonetheless *not* preempted by the federal banking regulations. *Id.* § 557.13. Among the listed categories are tort law, criminal law, and—most relevant for these purposes—contract law. *Id.* This final regulation, however, also contains crucial qualifying language: a state law which falls under one of the exempt categories may only escape Section 557.11's unambiguous field preemption to the extent the state law "incidentally affects [the savings association's] deposit-related activities or is otherwise consistent with the purposes of § 557.11." *Id.*

The Ninth Circuit has twice had occasion to consider the preemptive operation of Section 557.11 and its accompanying regulations. In one instance, *Lopez v. Washington Mutual Bank*, the Circuit evaluated a California law which, among other things, prohibited the use of certain deposits

6

to checking accounts in order to clear overdrafts. 302 F.3d 900, 907 (9th Cir. 2002). *Lopez* held that Section 557.12 expressly preempted the challenged California law. *Id.* ("By imposing requirements governing 'checking accounts,' . . . [the challenged California statute] falls within the specific categories of laws that are preempted under Section 557.12."). The Circuit again analyzed Section 557.11 later the same year, in *Bank of America v. City and County of San Francisco*. 309 F.3d 551, 561 (9th Cir. 2002). That case invalidated a San Francisco ordinance which attempted to prohibit the charging of ATM fees. While the opinion noted that Section 557.11 operates to preempt the field of the deposit-related practices of federal associations, it explicitly did not reach the question of whether Section 557.11 cut off the ATM fee ordinance under a theory of field preemption. Instead it based its finding of field preemption on a different regulation governing the operations (as opposed to deposit-related activities) of savings associations.

Unlike the instant case, *Lopez* and *Bank of America* involved challenges to a state statute or local ordinance, rather than an aggrieved individual's state law cause of action. Nonetheless, they are instructive because they point to a general Ninth Circuit policy of giving significant teeth to the preemptive powers asserted by Section 557.11 and similar OTS regulations. As one district court has noted, "absent congressional grant, the arrogation of preemptive authority by regulatory fiat is not entitled to judicial deference. [In the case of OTS regulations], however, the courts [in the Ninth Circuit] have recognized the congressional grant of broad power to the OTS in the area of regulatory control of federal savings and loan associations." *Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1011 (E.D. Cal. 2002) (citing, *inter alia*, *Bank of America*, 309 F.3d at 558) (rejecting the defendants' argument that "the express declaration of preemptive effect by the federal regulators should be ignored" and that "the OTS declarations of preemptive effect are not 'substantive,' but rather are self-serving claims of federal authority in the form of 'placeholder regulations' which exceed the power of the OTS, and are therefore void").

The theme of enforcing the preemptive effect of OTS regulations is reflected in the holding of a recent California district court, *Guadagno v. E\*Trade Bank*, in which the plaintiff contended that her state law unfair competition ("UCL") claim was not preempted by Section 557.11 because it fell within the "incidental" exception in Section 557.13. 592 F. Supp. 2d 1263, 1273 (C.D. Cal.

7

2008). The *Guadagno* court disagreed, observing that a law of general application (such as California's unfair competition law) is far from incidental if it "*requires a thrift and savings bank to affirmatively change its practices*." *Id.* (emphasis added). The court concluded that, since the plaintiff was requesting injunctive relief that would affect the defendant savings association's future practices, her UCL claim did not fall under the "incidental" exception and could not survive field preemption under Section 557.11. *Id. Guadagno*'s reasoning echoes similar language in another recent decision, *Reyes v. Downey Savings and Loan Association, F.A.*, in which the court noted: "[W]hen plaintiffs rely on state laws of general application, their claims are preempted if the state laws, as applied to federal savings and loans, *require affirmative action by the federal savings and loans association or other behavior specific to savings and loans activity*." 541 F. Supp. 2d 1108, 1113 (C.D. Cal. 2008) (emphasis added). This "affirmative action" test articulated by *Guadagno* and *Reyes* is consistent with the Ninth Circuit's general policy of recognizing and deferring to the preemptive operation of the OTS regulations.

In deciding whether the instant lawsuit falls under Section 557.13's "incidental" exception to Section 557.11's field preemption, the crucial point is whether Vathana and his putative class seek to force EverBank into an affirmative change of its deposit-related practices. Vathana's complaint names breach of contract as its sole cause of action, and it requests general and special damages, costs, and interest, but no injunctive relief. Complaint at 10. Vathana's counsel, moreover, conceded at oral argument that any lawsuit that did seek such injunctive relief would likely be preempted by HOLA and corresponding OTS regulations. Thus, unlike the injunctive relief sought by the plaintiff in *Guadagno*, the limited, retroactive nature of the relief sought here places the instant lawsuit under Section 557.13's "incidental" exception to Section 557.11's field preemption. A consumer's state law breach of contract claim against his savings association appears to be precisely the type of exception Section 557.13 contemplates. *See In re Ocwen Loan Servicing, LLC, Mortgage Servicing Litigation*, 491 F.3d 638, 643 (7th Cir. 2007) (interpreting a similar OTS regulation and noting that, apart from some limited "prosecutorial and adjudicatory powers ancillary to its regulatory function," OTS "has no power to adjudicate disputes between S & Ls and their customers," and that this suggests "OTS's assertion of plenary regulatory authority does not deprive

8

persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies"). If, as EverBank urges, Section 557.11's field preemption bars even a simple common law breach of contract claim, then it is hard to see what kind of state law claim *would* fall under Section 557.13's "incidental" exception. EverBank's preemption argument is therefore must fall.

## V. CONCLUSION

Because EverBank has met its burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.00 and that the Court is authorized to exercise diversity jurisdiction under CAFA, Vathana's motion to remand is DENIED.

Because at this juncture the Court must construe the allegations in the complaint in favor of Vathana, EverBank's first two arguments in favor of its motion to dismiss are unpersuasive. Further, the case is not preempted by OTS regulations, because it falls under 12 C.F.R. § 557.13's "incidental" exception. EverBank's motion to dismiss is therefore DENIED.

IT IS SO ORDERED.

Dated: 10/5/09

RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE