IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EK VATHANA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

EVERBANK, a/k/a EVERBANK DIRECT, a/k/a EVERBANK FEDERAL SAVINGS ASSOCIATION; EVERBANK FINANCIAL CORPORATION; EVERBANK WORLD MARKETS; and DOES 1 to 25,

Defendants.

_____/

No. C 09-02338 RS

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

In this breach of contract action, plaintiff Ek Vathana moves to certify a class of investors whom he contends are similarly situated to himself in relation to defendants EverBank, EverBank Financial Corporation, and EverBank World Markets (collectively, "EverBank"). As explained in further detail below, the putative class meets the four requirements of Rule 23(a), and common issues of law and fact predominate among the members of the putative class consistent with Rule 23(b)(3). Therefore, Vathana's motion for class certification will be granted.

I. BACKGROUND

Vathana filed this putative class action in Santa Clara County Superior Court in April 2009,

and EverBank removed the case to this Court in May 2009. Vathana then moved to remand, while EverBank moved to dismiss. Both motions were denied. Vathana now brings this motion for class certification.[1]

The evidence adduced thus far reveals the following undisputed facts. Among its other financial products, EverBank offers an investment vehicle known as a WorldCurrency CD (WCCD). The concept behind this CD, according to the complaint, "is that one can send a deposit of US Dollars to EverBank, that EverBank will then convert those US Dollars to any one of a number of different foreign currencies, and that EverBank will hold those funds for a term in the form of a Certificate of Deposit and add interest thereto at the end of the term." In July 2008, Vathana invested 9,447.49 U.S. Dollars (USD) in a WCCD denominated in Icelandic krona (ISK) (CD 771). The value of CD 771 at the time of investment was 743,045.22 ISK. In September 2008, Vathana invested 40,040.07 USD in a second ISK WCCD (CD 237). The value of CD 237 at the time was 3,525,527.75 ISK. Both CDs had a term of three months.

The document governing these transactions was entitled "EverBank Account Disclosures and Terms & Conditions Agreement" (the Agreement). It provided that investors had three options when their CDs matured: (1) liquidation of the CD; (2) return of the interest and re-investment of the principal; or (3) rollover of the CD and its proceeds by re-investing in the same currency for the same maturity, at the current prevailing interest rate. Unless EverBank heard otherwise from the investor, the third option operated as the default.[2]

In early October 2008, the Republic of Iceland faced a severe monetary crisis, and the national government imposed sudden, significant controls on the amount of ISK that could be

---

[1] Vathana asks the Court to take judicial notice of certain documents previously filed in this action, including the notice of removal, EverBank's answer, and a declaration filed with the Court in September 2009. This request is unnecessary, however, as it is well-established that the Court may consider documents filed in the case before it without taking judicial notice of them. *See R.D. Olson Constr. L.P. v. Am. Safety Indem. Co.*, No. CV 08-5013 CAS, 2008 WL 4370059, at *5 n.4 (C.D. Cal. Sept. 23, 2008).

[2] According to EverBank, the amounts Vathana invested in July and September 2008 were actually rolled over from earlier, nearly identical CDs that Vathana had previously owned through EverBank. In fact, he first bought into Icelandic currency through EverBank's WCCD program in 2007, purchasing a $50,000 ISK CD in June 2007 and a second $11,500 ISK CD in July 2007. The original two CDs continued to roll over every three months until the present controversy arose.

2

No. C 09-02338 RS
ORDER

purchased by foreign investors. According to EverBank, these exchange controls reduced or eliminated EverBank's ability to purchase new ISK WCCDs for its customers. In October 2008 and for a time thereafter, EverBank notified its ISK WCCD holders via email that the banking crisis in Iceland was presenting problems for its routine currency exchanges, and that EverBank "currently [did] not have a way of rolling ISK CDs." Exh. A & B to Gaffney Decl.

On October 18, 2008, CD 771 matured, and Vathana sent EverBank a written instruction requesting that the CD be rolled over. The instruction also stated, "I will not accept a forced liquidation conversion. If you choose to close my accounts, I demand you send me the actual physical ISKs." Nonetheless, EverBank closed CD 771 on October 20, 2008, and, two days later, converted it into USD at what Vathana contends was "an incredibly low interest rate" in comparison to published rates. Specifically, at the time of its conversion, CD 771 was valued at 747,676.53 ISK, and EverBank converted it to 2,958.03 USD. Thus, Vathana's loss over the three-month term of CD 771 was 6,489.46 USD.

Similarly, in December 2008, CD 237 matured, and EverBank closed and converted it into US dollars at an allegedly unfavorable exchange rate. At the time of its conversion, the CD was valued at 3,547,501.93 ISK, and EverBank converted it into 16,339.19 USD. Thus, Vathana's loss over the three-month term of CD 237 was 23,700.88 USD.

Based on these events, Vathana filed a putative class action in Santa Clara County Superior Court in April 2009. The sole cause of action listed in the complaint was for breach of contract. Specifically, Vathana alleged that EverBank had breached the Agreement by closing out CDs 771 and 237 and converting them into US currency, rather than by re-investing their value in more CDs denominated in ISK, as Vathana had instructed. Additionally, he contended that a breach occurred when EverBank utilized an unreasonable ISK-USD conversion rate to close out his CDs.[3] Further,

---

[3] Vathana requests that the Court take judicial notice of the ISK-USD exchange rates on October 22, 2008, and December 10, 2008, as published by the Central Bank of Iceland. In support of this request, plaintiff's counsel offers two computer printouts from the Central Bank of Iceland's website. Courts in this Circuit have found that information available for the public's review on government websites satisfies the judicial notice requirements of Federal Rule of Evidence 201, because such information is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Victoria v. JP Morgan Chase Bank*, No. CIV. S-09-2059 LKK/KJM, 2009 WL 5218040, at \*2 (E.D. Cal. Dec. 29, 2009) (judicially noticing documents from the FDIC's website).

3

he alleged that a class of individual WCCD owners had experienced similar wrongs.  EverBank removed the action to this Court in May 2009.  Vathana moved to remand the case, and EverBank moved to dismiss the complaint.  Both motions were denied.

Vathana has now filed this motion for class certification, asking that the Court certify a class defined as "All purchasers of an EverBank WorldCurrency Certificate of Deposit denominated in Icelandic krona which matured between October 8 and December 31, 2008."  EverBank's records, upon which both parties rely, indicate that EverBank closed 695 ISK WCCDs during the relevant time period, affecting a total of 563 investors.  This putative class, according to Vathana, is entitled to restitution damages—that is, damages measured by subtracting the proceeds in USD generated from the closure of the CD during the last quarter of 2008 from the purchase price in USD on the date the investor bought the CD from EverBank (whether as a new CD or through automatic reinvestment of an old CD).[4]  Measured this way, the putative class's alleged damages total $7,650,138.18.

## II.  LEGAL STANDARD

The decision as to whether to certify a class is committed to the discretion of the district court and guided by Rule 23 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 23; *see also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, as well as at least one of the requirements of Federal Rule of Civil Procedure 23(b).  *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  A plaintiff must also establish that one or more of

---

[4] According to Vathana, there were a total of thirteen dates in the last quarter of 2008 on which EverBank closed out ISK WCCDs in violation of the Agreement: October 8, 15, 22, and 29; November 5, 12, 19, and 26; and December 3, 10, 17, 24, and 31.

4

the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). In this case, Vathana's motion focuses on Rule 23(b)(3). This subsection encompasses "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23 1966 advisory committee's note.

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 have been met. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie*, 524 F.2d at 901 n.17. Nonetheless, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." *Pablo v. ServiceMaster Global Holdings, Inc.*, No. C 08-03894 SI, 2009 WL 2524478, at *4 (internal quotation marks omitted). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed. R. Civ. P. 23. *See Blackie*, 524 F.2d at 901 n.17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

III. ANALYSIS

EverBank concedes that Vathana has met Rule 23(a)'s four requirements of numerosity, commonality, typicality, and fair and adequate representation of the putative class's interests. The Court's independent review of these factors likewise indicates that the instant motion meets Rule 23(a). EverBank does, however, contend that Vathana has failed to make an adequate showing under Rule 23(b)(3) that "common questions of law or fact predominate and the class action is superior to other available methods of adjudication." According to EverBank, individual proof is necessary to determine whether each putative class member consented to the closure of his or her CDs and/or received advance notice of the closure. Additionally, EverBank argues that further inquiry will have to be made in order to determine which version of the Agreement applied to each putative class member, whether EverBank was entitled to close out each ISK WCCD on the basis of the *force majeure* clause in the Agreement, and whether the conversion rate used by EverBank on each CD was commercially reasonable. Vathana counters that any differences that may exist among the putative class members with respect to these factors are insignificant compared to the common issues that predominate.

In the recent case of *Yokoyama v. Midland Nat. Life Ins. Co.*, the Ninth Circuit examined a district court's denial of class certification in circumstances analogous to the present case. No. 07-16825, 2010 WL 424817 (9th Cir. Feb. 8, 2010). The district court in *Yokoyama* had analyzed the propriety of class certification in a lawsuit involving Hawaii's consumer protection laws, and concluded that the laws at issue required individualized showings of reliance on the defendant's alleged misstatements. The Ninth Circuit reversed, explaining that the Hawaii Supreme Court had interpreted the remedial consumer protection statute at issue to require only a showing of reliance as judged by an *objective* reasonable person standard. *Id.* at *5. Because the test was objectively measurable and did not require an individualized inquiry, the Ninth Circuit concluded that the district court had erred in holding that individualized reliance issues made the case inappropriate for class certification. *Id.*; *see also Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 737 (9th Cir. 2007) (affirming district court who granted class certification after concluding that the individual circumstances regarding how certain disputed disclosures were read or received would not destroy predominance).

Similarly, here, the principal point at which EverBank contends the putative class members differ among themselves is their consent or lack thereof to the ISK WCCD closures. The consent inquiry, however, like the reliance inquiry in *Yokoyama*, is objectively measurable and requires no individualized subjective determinations to be made by this Court. Consequently, differences among the putative class members on this score cannot defeat class certification. Similarly, the other potential points of difference raised by EverBank—notice, reasonableness of the conversion rate, which version of the Agreement is applicable, and applicability of the *force majeure* clause—may be decided by reference to objective criteria.

This analysis also gibes with another recent appellate decision, *United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers International Union v. Conoco-Phillips Co.*, in which the Ninth Circuit criticized the district court for inappropriately emphasizing objectively determinable factual issues in denying class certification—even though the court did not deny that plaintiffs' actual legal theory was one in which common issues of law or fact predominated over individual questions. 593 F.3d 802, 808 (9th Cir. 2010). The Ninth Circuit found that the lower court had abused its discretion by "treat[ing] plaintiffs' actual legal theory as all but beside the point" and instead focusing its analysis on factual differences among the putative class which were admittedly individualized inquiries. *Id.*

In the present case, EverBank effectively urges this Court to make the same mistake. There can be no question that the putative class members differ among themselves in certain factual aspects, such as the amount of money each person invested in ISK WCCDs, which version of the Agreement applied to which CD, what ISK-USD conversion rate was used to close out each CD, how much (if any) that conversion rate differed from a commercially reasonable rate, and so forth. The fact remains, however, that Vathana's legal theory of recovery for breach of contract is one in which common issues of law and/or fact predominate over individual questions. The members of the proposed class all purchased ISK WCCDs from EverBank which matured during the last quarter of 2008 and which were closed by EverBank. This lawsuit simply poses the question whether those closures constituted a breach of contract. For these reasons, a class action is superior to individual

7

adjudication of the putative class members' individual claims, and Vathana's motion for class certification is therefore meritorious.

## IV. ORDER

1. Vathana's motion for class certification is hereby granted.

2. The Court certifies the following class: *All purchasers of an EverBank WorldCurrency Certificate of Deposit denominated in Icelandic krona which matured between October 8 and December 31, 2008.*

3. The Court appoints Ek Vathana as the class representative, and the Law Offices of Michael Millen to act as class counsel.

4. Class counsel shall prepare a proposed form of class notice and shall meet and confer with defense counsel concerning the same. Any agreed-upon notice shall be presented to the Court for approval within thirty (30) days of the date of this order. In the event the parties cannot agree upon the form of notice, each side shall file their proposed version for consideration within 60 days of the date of this order. The Notice shall permit class members to opt-out of the class if they so desire within 45 days of notice having been sent.

5. Notice shall be provided to the class via U.S. Mail to the last known address reflected on defendants' records. Defendants shall cooperate with class counsel in preparing a computerized mailing list as required.

6. Class Counsel shall establish a website to assist with communication with members of the class, and to permit members of the class to provide updated address information.

7. The telephonic Supplemental Case Management Conference currently scheduled for April 8, 2010, is continued to **April 29, 2010 at 10:00 a.m.** The parties should submit an updated joint case management statement no later than **April 22, 2010**, which sets forth a proposed pretrial and trial schedule.

IT IS SO ORDERED.

8

No. C 09-02338 RS
ORDER

Dated: 03/15/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE