UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EK VATHANA,

    Plaintiff,

    v.

EVERBANK, et al.,

    Defendants.

Case No. 09-cv-02338-RS

**ORDER APPROVING DISTRIBUTION PLAN AND GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS**

## I. BACKGROUND

Plaintiff Ek Vathana, representing a certified class of investors, brought this action based on his purchase of two certificates of deposit (CD) denominated in Icelandic króna (ISK) from defendants EverBank, EverBank Financial Corporation, and EverBank World Markets (collectively "EverBank"). Vathana claims that EverBank's decision to close his CDs on their respective maturity dates rather than roll them over amounted to a breach of contract. EverBank maintains its action was authorized and compelled by the banking crisis that gripped Iceland in October of 2008. A class was certified of "[a]ll purchasers of EverBank WorldCurrency Certificate of Deposit denominated in Icelandic krona which matured between October 8 and December 31, 2008." Vathana became the class representative and served in that capacity throughout the litigation.

In March 2016, preliminary approval of the class settlement was granted, and Rust Consulting, Inc., was assigned to administer all claims. Rust sent notices to all class members,

1   and only one class member expressed concern about the recovery total.  Now, the parties jointly
2   move for final approval of the settlement, and Vathana moves for approval of the following:  (1)
3   the plan to allocate funds to class members; (2) an award of attorney fees in the amount of
4   $250,000 (33.3% of the settlement fund) and $40,127.28 for expenses; (3) an incentive award in
5   the amount of $12,500; (4) administration expenses in the amount of $21,675 ($10,000 of which
6   will be paid by defendants) and an additional $2,000 if there must be a second-round distribution;
7   (5) a threshold to halt distributions to class members at $5,000, whereby all remaining funds will
8   go to the National Endowment for Financial Education ("NEFE"); (7) removal of a class member
9   who has died.

## II.   DISCUSSION

### A.  Final Approval and Allocation

Vathana proposes a somewhat complicated method for calculating the percentage of the fund each class member will receive.  Each class member will receive a pro rata share that also takes into consideration the conversion loss tied to the difference between EverBank's conversion rate and that of the Central Bank of Iceland.  The proposed formula requires calculating a conversion loss and multiplying that by the amount each class member paid on the date his or her CD matured.  Thus:

$$\left(\frac{Everbank's Conversion\ Rate}{Central\ Bank\ of\ Iceland's\ Mid\ Rate} - 1\right) \times USD\ Amount\ EverBank\ Paid\ at\ CD\ Close$$

Vathana created a table with dates and the conversion rates of EverBank and the Central Bank of Iceland for that day to enable each class member to identify the date his or her CD matured and identify the difference between the two conversion rates.  The purpose of this formulation is (1) to ensure class members recover an amount commensurate with their investment; and (2) to account for the fact that some class members were harmed more than others

ORDER GRANTING FINAL APPROVAL AND AWARDING ATTORNEY'S FEES AND COSTS
CASE NO. 09-cv-02338-RS
2

because the difference between the conversion rates of EverBank and the Central Bank varied significantly.[1]

Federal Rule of Civil Procedure 23(e) requires district courts to review the settlement to ensure it is "fundamentally fair, adequate and reasonable" before approving the settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted). When making that determination, courts consider various factors including: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial;" (4) the amount of the settlement offer; (5) the stage of the proceedings and discovery; (6) "the experience and views of counsel"; and (7) "the reaction of class members to the proposed settlement." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850-51 (N.D. Cal. 2010).

Vathana and EverBank reached this settlement with the help of an experienced magistrate judge. Where, such as here, the settlement "is the product of arms-length negotiations" with capable counsel, the settlement is presumptively fair and reasonable. *Wakefield v. Wells Fargo & Co.*, No. 3:13-CV-05053 LB, 2015 WL 3430240, at *4 (N.D. Cal. May 28, 2015). Counsel for the class is experienced and he has proven himself to be a zealous advocate for these plaintiffs over the past seven years.

Had plaintiffs gone to trial, they would have faced numerous challenges. *See Vathana v. Everbank*, No. C 09-2338 RS, 2012 WL 822554, at *1-7 (N.D. Cal. Mar. 9, 2012), *aff'd in part, rev'd in part and remanded*, 770 F.3d 1272 (9th Cir. 2014) (granting summary judgment to EverBank). Moreover, a battle of the experts would have ensued at trial, and the possibility remained ever present that the jury would find EverBank's expert more credible. All in all, the

---

[1] To illustrate, Vathana offers his situation as an example. Vathana's paid $2,958.03 when his CD matured on October 22, 2008. On that date, EverBank's conversion rate was 252.76, while the Central Bank's was 117.06. Thus, according to this formula, Vathana's conversion loss is $3,429.05 ((252.76/117.06 - 1) x $2,958.03). Then, each class member's conversion loss is divided by the total loss amount. Vathana is therefore entitled to recover 00.106947% of the net settlement fund after fees, costs, and incentive awards are distributed and will likely receive a check in the amount of $465.96.

risk at trial would have been great, and while the total recovery for some plaintiffs may seem modest, it is far better than $0 that might have resulted.

Most class members received notice of the settlement and the opportunity to object. Only one class member submitted a letter to the court, expressing his regret that the total recovery paled in comparison to his losses. Nevertheless, he recognized the risk of prolonged litigation. The class members' silence in this case speaks to the fairness and reasonableness of the outcome.

Finally, Vathana's proposed allocation method is reasonable and fairly calculated to ensure class members' recovery is proportional to their losses. Accordingly, the proposed allocation plan and settlement must be approved.

### B. Attorney Fees & Costs

Class counsel Michael Millin requests a fee award of $250,000 (33.33% of the settlement fund). Millen has expended over 729.4 hours of his time for which he typically bills $650 per hour. In addition, he seeks reimbursement for costs in the amount of $40,157.28.

Attorneys who obtain a common fund for the benefit of a class are entitled to a reasonable fee from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). District courts have the option to use the lodestar method of calculating fees or, when there is a common fund for the benefit of a class, awarding attorneys a percentage of the common fund. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). Many courts in this district use 25% as the benchmark. *Id.* at 942. Nevertheless, courts have the power to award more or less than this starting point in "special circumstances." *Id.* Five factors help inform whether a fee request is reasonable: (1) the results for the class; (2) the risks presented by the case; (3) whether "counsel's performance generated benefits beyond the cash payment fund"; (4) how the requested fee compares to the market rate; and (5) the complexity of the case. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

There is little reason to quibble with Millin's hourly fee. He has requested judicial notice of an expert declaration from a different case, wherein the expert opines rates between $700-800 are reasonable in the San Francisco Bay Area. Millin has spent the past twenty-five years

litigating class actions, and therefore his hourly rate is commensurate with attorneys with similar experience practicing in the Bay Area. *See In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.").

To track time spent on a matter, Millin uses software that contemporaneously records his time. He has produced records from that program documenting the 729.4 hours expended on this case. Millin stopped recording time for this matter on April 13, 2016, and therefore the records submitted do not reflect the time he spent drafting the instant motions, responding to class member calls, or conferring with Vathana. The loadstar check reveals Millin could, in theory, recover $474,110 for his services. The $250,000 he seeks is therefore significantly lower than the lodestar.

The time Millin has expended is reasonable given the length of this litigation, the aggressiveness of the defense, and the fact he ultimately prevailed in part on appeal. Millin's tenacity and advocacy throughout the past seven years means his clients will be able to recover something for their loss even if not everything they hoped. Moreover, while the recovery for the class is modest, there were significant weaknesses to the case. Finally and importantly, class members had the opportunity to review Millin's fee application, and not one has submitted an objection. Accordingly, Millin's $250,000 fee request will be granted.

Millin has also submitted a ledger documenting the costs. Class members have not filed any objection to those costs, and independent review confirms they are reasonable and within the range of expenses that usually accumulate over seven years of litigation. The request for reimbursement of $40,127.28 is therefore approved.

**C. Incentive Award**

Vathana requests compensation in the amount of $12,500 for acting as class representative throughout the litigation in addition to his pro rata recovery amount estimated at $465.96. Incentive awards are fairly typical in class actions. The purpose of such awards is "to compensate

class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). District courts have generally broad discretion to approve incentive awards, but the Ninth Circuit has "told district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Disproportionately high payments to class representatives are disfavored. *Id.*

At least some members of this court have concluded $5,000 incentive awards are presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."). Millin has submitted a declaration, which describes Vathana's involvement in this litigation and paints him as an active participant. Vathana reviewed all pleadings and discovery, discussed strategy with counsel, and attended all summary judgment hearings, the Ninth Circuit argument, and the settlement conference—all of which occupied a significant amount of his time.

While the proposed incentive award is on the high end, it is reasonable under the unique circumstances in this case. Vathana has been an active participant in this litigation for the past seven years, and therefore is entitled to some additional compensation for his efforts. In light of Vathana's extraordinary effort and the fact no class members have objected to the proposed award, his request for $12,500 is granted.

**D. Administration Costs**

Rust anticipates the costs of notification and distribution to class members to amount of $21,675 to send checks to all class members, to maintain a website, and to field questions. Defendants will pay the first $10,000 of these costs to Rust directly. The remaining portion ($11,675) will be deducted from the settlement fund. Rust also requests approval of the right to deduct up to $2,000 from the settlement fund if there is a second distribution. All in all, these

administration costs are consistent with costs in other class actions, and therefore are approved.

### E. Cy Pres

"A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citations and internal quotation marks omitted). At the preliminary hearing, the parties had designated Habitat for Humanity as the proposed *cy pres* recipient—a charity with minimal connection to the underlying claims at issue. In response to this concern, Vathana identified NEFE as the proposed *cy pres* beneficiary. NEFE is a 501(c)(3) organization dedicated to educating consumers about how to manage investments. NEFE's mission and purpose is sufficiently tied to the nature of the claims and the plaintiffs' concerns to satisfy *Dennis*'s requirements.

Vathana proposes imposing a threshold to cut off second- and third-round distributions. If less than $5,000 remains in the settlement fund after the first distribution, plaintiff proposes sending the amount immediately to NEFE rather than attempt a second distribution. Vathana's request makes sense in light of the fact that the expected cost of a second distribution is $2,000, and second-round distribution costs may exceed the amount to be distributed. Accordingly, the proposed $5,000 threshold is approved. Rust and Millin may forward remaining settlement funds to the NEFE in lieu of further round(s) of distribution without court approval if the amount remaining in the settlement fund is $5,000 or less.

### F. Deceased Class Member

While sending class notices, Rust encountered some difficulty locating H.K. of Arkansas, who stands to receive approximately $305 from the settlement fund. Further investigation revealed that H.K. died recently. Millin's attempt to contact H.K.'s next of kin proved unsuccessful. In light of these circumstances, Millin proposes striking H.K. from the class as well as "any other deceased or unlocatable Class Members for whom [Rust] believes it is not cost effective to perform an heir search or other search in light of the size of the distribution due the class member." Mot. for Attorney Fees at 16.

Striking such deceased class members such as H.K. seems unnecessary. Instead, the distribution will proceed as usual, and Rust will send a check to H.K. If he or his next of kin do not cash the check within ninety days, those funds will revert to the settlement fund.

### III.   CONCLUSION

In sum, class counsel's motion for attorney's fees and costs is granted. He will receive $250,000 from the settlement fund and reimbursement for $40,127.28 for costs. Lead plaintiff Ek Vathana is granted an incentive award in the amount of $12,500. The class administrator may recover up to $21,675 for services in this case and an additional $2,000 if there is a second-round distribution.

Plaintiff's proposed allocation plan is approved. The motion to strike H.K. is denied. The *cy pres* designation is approved; the class administrator may forward all remaining settlement funds to the National Endowment for Financial Education if the amount remaining in the settlement fund is less than $5,000.

**IT IS SO ORDERED**.

Dated:  July 20, 2016

_____
RICHARD SEEBORG
United States District Judge